Maria LEDFORD and Donald Ledford, her husband, Plaintiffs,

v.

CENTRAL MEDICAL PAVILION, INC., Central Medical Health Services, Inc., Dr. F. Chang, Dr. Richard S. Gehl, Dr. Stanley Bushkoff, Orthopedic Associates of Pittsburgh, Inc., Dr. Herbert Tauberg, Defendants and Third-Party Plaintiffs,

v.

Gene H. SAMUELSON, M.D. and Marta J. Chaplynsky, M.D., Third-Party Defendants.

Civ. A. No. 79–1480.

United States District Court, W. D. Pennsylvania.

Feb. 11, 1982.

Rex Downie, Jr., Beaver Falls, Pa., for plaintiff.

Louis B. Loughren, Pittsburgh, Pa., for Central Medical.

James F. Israel, Pittsburgh, Pa., for Drs. Gehl, Bushkoff and Orthopedic Services.

William D. Phillips, Washington, Pa., for Drs. Chang and Tauberg.

S. Asher Winikoff, Pittsburgh, Pa., for Lumbermen's Mutual.

David P. Helwig, Pittsburgh, Pa., for Dr. Samuelson and Dr. Chaplynsky.

## OPINION

WEBER, Chief Judge.

This is a diversity medical malpractice action brought against several Pennsylvania physicians and a Pennsylvania Hospital. Although Plaintiff resided in Arizona at the time of the institution of suit she formerly resided in Pennsylvania at the time the alleged improper medical treatment was rendered. The Defendants have joined as Third-Party Defendants two physicians now residing in and maintaining offices in Steubenville and East Liverpool, Ohio, who treated plaintiff subsequently in Ohio, alleging that plaintiff's present complaints were the result of treatments in Ohio.

The Third-Party Defendants have moved to dismiss the action against them on the grounds that a court sitting in Pennsylvania has no personal jurisdiction over them.

Movants aver that none of the complained of acts by them took place in Pennsylvania. These acts consisted of diagnostic tests, cervical traction, a myelogram, and a cervical fusion performed on the Plaintiff in Ohio. Movants aver that they have not practiced medicine in Pennsylvania since 1974, that they have had no hospital privileges in Pennsylvania since 1974, they do not hold themselves out by listing in any Pennsylvania directories, and that despite their possession of a Pennsylvania professional corporation charter and their sometime renewal of a Pennsylvania license to practice, they have not so practiced medicine in any form in Pennsylvania.

The Third-Party Plaintiffs have responded that Third-Party Defendants treat a substantial number of Pennsylvania residents. However, these patients come to the doctors at their Ohio office, generally by recommendation of other patients. Because Steubenville is about 10 miles from the Pennsylvania border, and East Liverpool is about one mile, this is not significant. We do not consider the treatment of Pennsylvania residents in Ohio as doing business in Pennsylvania, without more evidence of solicitation or an established referral system in Pennsylvania. Nor do we hold that

maintaining a Pennsylvania license to practice is sufficient, nor the unused Pennsylvania professional corporation charter, nor the ownership of a piece of residential real estate in Philadelphia.

■ The Third-Party Plaintiffs have shown, however, that the Third-Party Defendant, Dr. Samuelson, does an extensive business in testifying as an expert witness in Pennsylvania courts, or supplying depositions or expert witness reports in connection with Pennsylvania litigation. In two cases in 1979, Dr. Samuelson testified in Allegheny County for a fee of $5,000 in each case. In 1980 and 1981, Dr. Samuelson provided deposition testimony for use at trial in 6 cases in Pennsylvania, 5 in Pittsburgh and one in Beaver County, for total fees of $1,550. From 1976 to 1981, Dr. Samuelson provided expert medical reports to 26 attorneys in Pennsylvania, the great majority in Pittsburgh, for fees totalling $3,075.

The court takes note that expert medical reports are required to be filed in all cases where a physician may be called to testify in courts in Allegheny County, Pennsylvania, as well as in the United States District Court in Pittsburgh, Pennsylvania, and that a large number of the physicians who give such reports and so testify have been engaged by counsel specifically for the purpose of examining and evaluating an injured plaintiff and rendering a report with the possibility of ultimately testifying personally or by deposition at the trial of the action, if it should come to trial. Of course, it is well established by statistical studies that a very small number of cases filed ever come to actual trial, and in such cases it is more and more common for a physician to testify by deposition, as did Dr. Samuelson in six cases in 1980 and 1981.

From the circumstances, and particularly the fees charged for his reports to attorneys, it is a fair inference that the reports furnished were cases where Dr. Samuelson was not reporting about patients who had originally come to him for treatment, but rather cases where he accepted an assignment from a Pennsylvania lawyer to examine a Pennsylvania litigant for the purpose of supplying a report for use in litigation in Pennsylvania. Supportive of this conclusion is the fact that Pittsburgh is located some 40 miles from Steubenville or East Liverpool, somewhat beyond the normal radius from which patients might come seeking orthopedic treatment in Steubenville. Also, Allegheny County is not the nearest Pennsylvania county to Steubenville, Ohio; both Washington County and Beaver County intervene and are closer, but of Dr. Samuelson's 26 reports only 3 were furnished to Beaver County attorneys and 3 to Washington County attorneys.

We find, therefore, that Dr. Samuelson has engaged in a continuous course of conduct for pecuniary benefit in Pennsylvania in many matters outside this lawsuit. In this lawsuit it is alleged that he was guilty of acts of negligence in the treatment of a resident of Pennsylvania, the effects of which were manifested in Pennsylvania. He receives substantial income from the treatment of Pennsylvania residents from Pennsylvania medical insurance carriers. These acts are so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction. *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974). We see no fundamental unfairness under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) which should deny a Pennsylvania court to exercise jurisdiction. The contacts are not scant, they are multiple and continuous.

■ We further hold that we are not barred by the prior action of the Administrator of the Arbitration Panels for Health Care, while this cause of action was under his jurisdiction. He dismissed the claims against Drs. Samuelson and Chaplynski as being outside his jurisdiction. The claims in that action had not been fully decided when the Act was held unconstitutional and the Act itself provided for a trial *de novo* in the Courts of Common Pleas after arbitration. Thereafter a new complaint was filed in this District Court. We may determine our own jurisdiction without regard to an interlocutory determination by the Arbitrator.

In the meantime nobody has come forward to respond to, or rebut, the affidavit and allegations of the other Third-Party Defendant, Marta J. Chaplynski who also moves to dismiss for lack of personal jurisdiction. While she is the long time medical associate and wife of Dr. Samuelson, neither of these facts support personal jurisdiction over her. Her allegations that she performed no services in Pennsylvania are not rebutted by the evidence which we deem sufficient to hold Dr. Samuelson. The action against her will be dismissed.